STATE of Missouri, Respondent,

v.

William Theodore BOLIEK,
Jr., Appellant.

No. 66684.

Supreme Court of Missouri,
En Banc.

March 25, 1986.

C.J. Larkin, Columbia, for appellant.

William L. Webster, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, William Theodore Boliek, Jr., was convicted of capital murder, § 565.001, RSMo 1978 (now repealed) and the jury, having found the aggravating circumstances required by law, imposed the death sentence. He appeals from his conviction and sentence, urging numerous grounds for reversal. We have exclusive appellate jurisdiction. Mo.Const. art. V, § 3. We affirm.

In August of 1983, appellant was living in Linda Turner's home. Aside from Turner, other residents of the household included appellant's lover Jill Harless, Turner's brother Don Anderson, and Vernon Wait. The victim, Jody Harless, arrived to visit her sister, Jill, and stayed at the Turner home. One Friday evening, appellant, Wait, Anderson, and Jody Harless robbed the home of an acquaintance, Stan Gray, at gunpoint. Afterward, fearing retaliation from Gray and his friends, appellant acquired a 12 guage shotgun, and Wait acquired a .410 sawed off shotgun. Appellant and Wait began to discuss the necessity of "getting rid of the witnesses" to the robbery. Learning that the police wanted to speak with the victim, appellant, Wait, and the Harless sisters left Kansas City on the following Monday.

Appellant convinced the others to drive to Thayer, Missouri, and hide out with appellant's parents. Appellant brought the 12 gauge shotgun and shells and Wait brought the .410 shotgun and shells. While en route to Thayer, appellant and Wait robbed a liquor store in Nevada, Missouri.

Later that night, the group made a rest stop along Route M in Oregon County. After the car stopped, Jody Harless walked away from the car. When she began walking back toward the vehicle, appellant took the 12 gauge shotgun from the auto, and shot her. The victim grabbed her stomach but continued walking toward appellant. She began to plead with appellant, "Please don't do it. No Ted, please don't do it." Wait grabbed the victim and forced her to the ground, and appellant shot the victim again. Appellant told the victim's sister that he had fired the second shot into the victim's mouth and neck so identification of the body would be impossible.

Appellant was arrested September 6, 1983, in Decatur, Illinois, for an armed robbery of a gas station committed earlier that day. When arrested, appellant had in his possession 12 gauge shotgun shells and the 12 gauge shotgun used to kill Jody Harless. Appellant managed to escape from custody but was recaptured.

A rancher riding his fenceline discovered the body of Jody Harless September 10, 1983, 28 feet from Highway M in Oregon County, Missouri. Police investigators arrived and discovered two live .410 shotgun shells and two expended 12 gauge shotgun shells near the body. The victim's decomposed body, unidentifiable by viewing, later was identified through dental records. The victim had been killed by a shotgun wound to the head.

At trial, appellant claimed that when he fired the first shot he did not know the gun was loaded. The second shot, according to appellant, was fired by Wait. The jury

found appellant guilty of capital murder and imposed the death sentence.

## I

■ Appellant first contends that excluding prospective jurors who would not consider death as a possible punishment for the crime charged violates the Sixth and Fourteenth Amendments of the United States Constitution, as well as Article I, § 5 of the Missouri Constitution and § 546.-130, RSMo 1978. The exclusion of prospective jurors who indicate they would not consider imposing the death penalty has been held to be constitutional by the Supreme Court. *Lockett v. Ohio*, 438 U.S. 586 (1978). We consistently have approved challenging for cause prospective jurors who indicate that they cannot impose the death sentence, *State v. Gilmore*, 697 S.W.2d 172 (Mo. banc 1985); *State v. Malone*, 694 S.W.2d 723 (Mo. banc 1985); *State v. Johns*, 679 S.W.2d 253 (Mo. banc 1984).

## II

■ Appellant raises several evidentiary issues. Initially, appellant argues that the admission of testimony indicating that he possessed a knife was irrelevant and prejudicial. Since appellant has failed to preserve this point, we review it under the plain error rule. Rule 29.12(b). Appellant's own attorney elicited this testimony, and no request was made to have the jury instructed to disregard the reference to a knife. Under these circumstances, there was no error on the part of the trial court in not, *sua sponte*, giving an instruction to disregard this evidence.

## III

■ Appellant further argues that the trial court erred when it allowed the state to display a .410 shotgun before the jury. We again must review this issue under the plain error rule, because appellant failed to preserve the objection. Although this gun was not the murder weapon, it was in Wait's possession at the time of the murder, and there were .410 shotgun shells found at the scene of the crime. The weapon was never introduced into evidence. It only was used to aid the jury in visualizing the testimony concerning this weapon and the shells found where the victim was killed. There was no error and the point is denied.

## IV

■ Next, appellant contends that the trial court committed prejudicial error by allowing one of the arresting officers to testify that he made "a felony stop." Appellant argues that this statement was a reference to the armed robbery appellant allegedly committed, and it should have been excluded as improper evidence of other crimes. The jury was never informed of the armed robbery of the gas station; and thus, the jury was not aware that the "felony stop" was a reference to another crime. The jury only could have presumed that the officer made "a felony stop" for the crime under consideration at trial. The trial court correctly refused to instruct the jury to disregard the officer's statement. The instruction was not required and only would have signaled to the jury that there might have been another crime.

## V

■ Appellant also asserts that the victim's sister was ineligible to be a state witness since she was a co-defendant. The general rule is that "a defendant jointly charged with others cannot, in a separate trial of one of his [or her] co-defendants testify for the state." *State v. Blevins*, 427 S.W.2d 367, 369 (Mo.1968); *See* § 546.-280, RSMo 1978; Supreme Court Rule 27.-04. However, the rule against co-defendants testifying against one another does not control if the defendants were charged in separate indictments. *State v. Haynes*, 510 S.W.2d 423, 424–25 (Mo.1974); *State v. Nickens*, 581 S.W.2d 99, 101, 02 (Mo.App. 1979). Since Harless and appellant were charged in separate indictments, Harless was not barred from testifying against appellant.

## VI

Appellant raises the additional evidentiary claim that the trial court erred in allowing testimony from two witnesses that, in the days immediately preceding the victim's departure from Kansas City, the victim stated that she feared appellant was going to kill her. The general rule is that such statements of a declarant's present mental condition made out of court are excepted from the hearsay ban. Hasl & O'Brien, Mo. Law of Evidence, § 11–18 (1984); G. Wigmore, Evidence, § 1714 (Chadbourn Rev.1976); *State v. Huffman,* 659 S.W.2d 571, 574 (Mo.App.1983); *State v. Singh,* 586 S.W.2d 410, 417–19 (Mo.App. 1979). Ordinarily, however, such statements are not admitted except in limited situations when they are relevant and the relevancy outweighs their prejudicial effect. *See United States v. Brown,* 490 F.2d 758 (D.C.Cir.1974); *State v. Singh,* 586 S.W.2d at 419. Trial courts are in the best position to determine the probativeness and prejudicial effect of the evidence. *State v. Kenley,* 693 S.W.2d 79, 81 (Mo. banc 1985). Under the facts of this case, there was no abuse of discretion in permitting this testimony.

## VII

Appellant avers that the trial court erred in not granting an overnight continuance immediately at the close of the State's case. The question of whether a continuance is appropriate is a discretionary matter for the trial court. *State v. Jordan,* 646 S.W.2d 747, 753 (Mo. banc 1983). A strong showing is required to establish an abuse of such discretion. *State v. Cuckovich,* 485 S.W.2d 16, 21 (Mo.1972). In the case at bar, appellant's counsel had indicated to the court that he was ready to proceed and had spent time with appellant preparing the case. Counsel was fully aware of the expected length of the trial. After the state finished its case in chief, counsel for appellant requested an overnight continuance in order to prepare appellant's testimony. The court denied the continuance but granted a 30 minute recess and upon reconvening adjourned until the following morning at 9 a.m. Given these facts, we believe that appellant, in fact, obtained his requested continuance and cannot now be heard to complain.

## VIII

Appellant contends that the imposition of death as punishment is always cruel and unusual punishment under the Eighth Amendment of the Constitution of the United States and Article 1, Section 21 of the Constitution of the State of Missouri. The United States Supreme Court has approved the imposition of the death penalty when criminal procedures are followed which assure that the application of this punishment is not discriminatory, wanton, or freakish. *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979); *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Roberts v. Louisiana,* 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977); *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The statute under which appellant was sentenced to death is modeled closely after the Georgia statute which the United States Supreme Court has declared constitutionally adequate. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). This Court also has consistently held that the capital punishment statutes under which appellant

was tried are not in violation of the Missouri or United States Constitutions. *See e.g. State v. Foster,* 700 S.W.2d 440 (Mo. banc 1985); *State v. Gilmore,* 697 S.W.2d 172 (Mo. banc 1985); *State v. Nave,* 694 S.W.2d 729 (Mo. banc 1985); *State v. Malone,* 694 S.W.2d 723 (Mo. banc 1985); *State v. Kenley,* 693 S.W.2d 79 (Mo. banc 1985).

## IX

We now turn to our statutory mandated duty to review independently the sentence imposed by the jury. § 565.014.3, RSMo 1978. Appellant's final points are addressed herein.

Appellant does not contend his sentence was imposed by a jury or judge motivated by any arbitrary factor, and the trial court determined that the jury was not influenced by "passion, prejudice, or any other arbitrary factor when assessing punishment." Our independent review of the record substantiates the conclusion of the trial judge.

■ To support the finding of an aggravating circumstance, we must find substantial evidence to support the jury's finding beyond a reasonable doubt. *State v. Battle,* 661 S.W.2d 487, 493 (Mo. banc 1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984). The jury found appellant killed the victim intending to eliminate a witness. § 565.012.2(10), RSMo 1978. This victim was a witness to a robbery committed by appellant, Vernon Wait, and another. Appellant and Vernon Wait decided to take the victim from Kansas City after they learned the police were looking for her. Several witnesses testified they heard Wait say he wanted to kill Jody Harless because of what she had seen, and Jill Harless, the victim's sister testified that on more than one occasion appellant said they had to get rid of the robbery witnesses. We find the evidence adduced at trial sufficient to support the statutory aggravating sentence found.

■ Finally, we must consider whether the sentence imposed is excessive or disproportionate to the penalty assessed in similar cases, considering both the crime and the defendant. § 565.014.3(3), RSMo 1978. We must examine all capital murder convictions except those where the State waived the death penalty. *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). In our analysis, we compare the facts of the crimes together with the character and criminal history of the defendants. Although there was some evidence of alcohol or drug use by appellant, *no* mitigating circumstances were submitted to the jury. It is reasonable to conclude that appellant wounded the victim, she pled for her life, and then, while a companion flung and held her to the ground, appellant shot the victim in the head with a 12 guage shotgun held close to her face. Comparable crimes and defendants, in which we affirmed the death penalty, include *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985), in which a police officer was shot, wounded, then shot again at close range and killed, *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), *reh. denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982), in which two shotgun blasts were used to kill the shopkeeper/robbery victim, and *State v. Malone,* 694 S.W.2d 724 (Mo. banc 1985), *petition for cert. pending,* in which a cabdriver was robbed, shot, and killed. Finding no similar cases in which the defendant received a life sentence, we conclude appellant's sentence of death is not disproportionate to that imposed in comparable cases.

The judgment of the trial court is affirmed.

HIGGINS, C.J., BILLINGS, DONNELLY and RENDLEN, JJ., and DOWD, Special Judge, concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, concurring in part and dissenting in part.

I am unable to concur in the assessment of a death sentence in this case because of the admission of the testimony that the victim had said that she was afraid of the defendant.

I quite agree that, to the extent the victim's state of mind is material, her own declarations may be admitted under a recognized exception to the hearsay rule. My problem is that I am unable to see how her testimony that she feared the victim has any tendency to support an inference that he killed her. The statement has the vices of hearsay in that it cannot possibly be pierced by cross-examination. *See United States v. Brown,* 490 F.2d 758, 778 (D.C. Cir.1974); *State v. Miller,* 664 S.W.2d 229 (Mo.App.1983).

The state glibly cites *State v. Ford,* 639 S.W.2d 573 (Mo.1982); *State v. Jackson,* 663 S.W.2d 312 (Mo.App.1983) and *State v. Singh,* 586 S.W.2d 410 (Mo.App.1979) for the general proposition that the victim's state of mind is relevant. None is in point. *Ford* and *Jackson* involved claims of self-defense in which the court felt that the testimony of fear had a tendency to demonstrate that the victim was not an aggressor. *Singh* included a statement that the victim feared guns, by reason of which the jury might think it unlikely that she had taken up a firearm.

Here the defendant tendered a theory of accidental discharge not occasioned by the actions of the victim. The victim's statement about fear of the defendant does not logically refute this claim. The prejudicial effect in suggesting deliberation, premeditation, and possible disposition toward violence is made manifest. The principal opinion suggests that admission was a matter of discretion. Because there is no justifiable reason for admitting the evidence, any discretion was abused.

I am very much inclined to believe that the error did not prejudice the finding of guilty and that the conviction need not be reversed. I also believe that, if we are to have a death penalty, the death sentence is not disproportionate to the cases cited in the principal opinion nor to *State v. Johns,* 679 S.W.2d 253 (Mo. banc 1984), even though there are quite a few more aggravated cases in which death was not decreed. When the state seeks the ultimate penalty, however, this Court should take a strict view of trial error. I would therefore set aside the death sentence and would remand the case for a new trial on the punishment phase, or for resentencing, such as the state might elect.